**GARDY & NOTIS, LLP**
James S. Notis (JN-4189)
440 Sylvan Avenue, Suite 110
Englewood Cliffs, New Jersey 07632
Tel: 201-567-7337
Fax: 201-567-7377

**FARUQI & FARUQI, LLP**
Antonio Vozzolo (AV-8773)
320 East 39th Street
New York, New York 10016
Tel: 212-983-9330
Fax: 212-983-9331

Counsel for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| NATALIE GORDON,<br><br>              Plaintiff,<br><br>    -v-<br><br>TERENCE W. EDWARDS, GEORGE J. KILROY, NEIL J. CASHEN, A.B. KRONGARD, JAMES W. BRINKLEY, ANN D. LOGAN, JONATHAN D. MARINER and FRANCIS J. VAN KIRK,<br><br>              Defendants,<br><br>    -and-<br><br>PHH CORPORATION,<br><br>              Nominal Defendant. | No.<br><br>**VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY, ABUSE OF CONTROL, GROSS MISMANAGEMENT, WASTE OF CORPORATE ASSETS AND UNJUST ENRICHMENT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff brings this action derivatively on behalf of nominal defendant, PHH Corporation ("PHH" or the "Company") and alleges upon personal knowledge as to her own acts, and as to all other matters upon information and belief as follows:

## ALLEGATIONS PURSUANT TO LOCAL CIVIL RULE 10.1

1.    The names and addresses of the parties are as follows:

**Plaintiff**

Natalie Gordon
c/o Faruqi & Faruqi, LLP
320 East 39th Street
New York, New York 10016

**Defendants**

Terence W. Edwards
c/o PHH Corporation
3000 Leadenhall Road
Mt. Laurel, New Jersey 08054

George J. Kilroy
c/o PHH Corporation
3000 Leadenhall Road
Mt. Laurel, New Jersey 08054

Neil J. Cashen
c/o PHH Corporation
3000 Leadenhall Road
Mt. Laurel, New Jersey 08054

A.B. Krongard
c/o PHH Corporation
3000 Leadenhall Road
Mt. Laurel, New Jersey 08054

James W. Brinkley
c/o PHH Corporation
3000 Leadenhall Road
Mt. Laurel, New Jersey 08054

Ann D. Logan
c/o PHH Corporation
3000 Leadenhall Road
Mt. Laurel, New Jersey 08054

Jonathan D. Mariner
c/o PHH Corporation
3000 Leadenhall Road
Mt. Laurel, New Jersey 08054

Francis J. Van Kirk
c/o PHH Corporation
3000 Leadenhall Road
Mt. Laurel, New Jersey 08054

**Nominal Defendant**

PHH Corporation
3000 Leadenhall Road
Mt. Laurel, New Jersey 08054

## NATURE OF THE ACTION

2.     This is a shareholder derivative action brought by a shareholder of PHH, on behalf of the Company against certain of its officers and directors seeking to remedy defendants' violations of state law, including breaches of fiduciary duties, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment that occurred between February 1, 2005 and the present (the "Relevant Period") and that have caused substantial losses to PHH and other damages, such as to its reputation and goodwill.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over all claims asserted herein pursuant to 28 U.S.C. §1332(a)(2), because complete diversity exists between the plaintiff and each defendant, and the amount in controversy exceeds $75,000.  This action is not a collusive one to confer jurisdiction on this Court it would not otherwise have.  This Court also has supplemental jurisdiction pursuant to 28 U.S.C. §1367(a).

4.     This Court has jurisdiction over each defendant named herein because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with New Jersey so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

3

5. Venue is proper in the Court pursuant to 28 U.S.C. §1391(a) because one or more of the defendants either resides in or maintains executive offices in this District, a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein and aiding and abetting and conspiracy in violation of fiduciary duties owed to PHH occurred in this District, and defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District..

## SUMMARY OF THE ACTION

6. Cendant Corporation ("Cendant") spun-off PHH as a separate, publicly traded company as of February 1, 2005 (the "Spin-Off"). At the time of the Spin-Off, PHH made various determinations with respect to an allocation and valuation of various assets that, prior to the Spin-Off, were part of Cendant's consolidated financial reporting. These assets included deferred tax assets (essentially, tax credits that may be used to offset taxes owed on future income and thereby increase future net income (and the present value of such future net income)) and goodwill relating to the value of certain intangibles such as trademarks and customer lists.

7. Beginning on March 15, 2005, PHH began issuing a series of quarterly and year-end press releases and SEC filings that repeatedly and falsely overstated the Company's income and financial performance by overstating the Company's deferred tax assets and goodwill.

8. On March 1, 2006, PHH disclosed the overstatement of its previously reported financial statements as a result of the overstatement of deferred tax assets and goodwill, and disclosed that the overstatements were the result of material weaknesses in internal controls over the Company's financial reporting and that the Company's Chief Financial Officer had been replaced.

4

9.     Defendants' misconduct has exposed PHH to several million dollars in potential liability through securities class action lawsuits against PHH stemming from its false financial reporting.  These class action suits assert claims under the federal securities laws, and allege that investors purchased and/or retained shares of the Company based on materially false and misleading statements regarding the financial condition of the Company.   Moreover, the Company will continue to incur costs relating to increased legal fees and increased audit and consulting fees in connection with countless man hours which will be spent conducting PHH's internal investigation, remediation and restatement of its finances.

## THE PARTIES

10.    Plaintiff Natalie Gordon is and was at all relevant times a shareholder of PHH. Gordon is a citizen of New York.

11.    Nominal defendant PHH maintains its principal executive offices at 3000 Leadenhall Road, Mt. Laurel, New Jersey 08054.  PHH common stock is publicly traded on the New York Stock Exchange under the symbol "PHH."

12.    Defendant Terence W. Edwards ("Edwards") is and was at all relevant times a director of PHH and the Company's President and Chief Executive Officer.  Prior to the consummation of the Spin-Off, Edwards had served as President and Chief Executive Officer of Cendant Mortgage since February 1996 and as such was responsible for overseeing Cendant Mortgage's (now PHH Mortgage) mortgage banking operation.  From 1995 to 1996, Edwards served as Vice President of Investor Relations and Treasurer of PHH and was responsible for PHH's investor, banking and rating agency relations, financing resources, cash management, pension investment management and internal financial structure.  Edwards first joined PHH in 1980.  Edwards is a citizen of New Jersey.

5

13.    Defendant George J. Kilroy ("Kilroy") is and was at all relevant times a director of PHH and has been the President and Chief Executive Officer of the Company's PHH Arval subsidiary since March 2001. From May 1997 to March 2001, Kilroy served as Senior Vice President, Business Development, responsible for new client sales, client relations and marketing for PHH Arval's U.S. operations. Kilroy first joined PHH in 1976. Kilroy is a citizen of California.

14.    Defendant Neil J. Cashen ("Cashen") was at all relevant times until February 26, 2006, PHH's Chief Financial Officer and an Executive Vice President of the Company. t. Prior to the consummation of the Spin-Off, Cashen had served as Executive Vice President, Chief Operating Officer and Chief Financial Officer of PHH Arval since March 2001 and was responsible for PHH Arval's operations, including finance, strategic planning, customer and vehicle services, legal and human resources. From May 1997 to March 2001, Cashen was Senior Vice President of Finance and Planning for PHH Arval's North American fleet operations. Cashen first joined PHH in 1979. On February 26, 2006, Cashen was relieved of his responsibilities as PHH's Chief Financial Officer. Cashen is a citizen of Maryland.

15.    Defendant A.B. Krongard ("Krongard") is and was at all relevant times a director of PHH and Chairman of the Company's board of directors. Krongard is also Chairman of the Corporate Governance Committee and a member of the Compensation Committee of the board of directors. Krongard is a citizen of Maryland.

16.    Defendant James W. Brinkley ("Brinkley") is and was at all relevant times a director of PHH. Brinkley is also Chairman of the Compensation Committee and a member of the Corporate Governance Committee of the board of directors. Brinkley is a citizen of Florida.

6

17.    Defendant Ann D. Logan ("Logan") is and was at all relevant times a director of PHH. Logan is also a member of the Compensation Committee of the board of directors. Logan is a citizen of Connecticut.

18.    Defendant Jonathan D. Mariner ("Mariner") is and was at all relevant times a director of PHH. Mariner is also a member of the Audit Committee and a member of the Corporate Governance Committee of the board of directors. Mariner is a citizen of Florida.

19.    Defendant Francis J. Van Kirk ("Van Kirk") is and was at all relevant times since July 1, 2005 a director of PHH. Van Kirk is also Chairman of the Audit Committee of the board of directors. Van Kirk is a citizen of Pennsylvania.

20.    Defendants Edwards, Kilroy, Krongard, Brinkley, Logan, Mariner and Van Kirk are collectively referred to herein as the "Director Defendants." Defendants Edwards, Kilroy and Cashen are collectively referred to herein as the "Officer Defendants." The Director Defendants and the Officer Defendants are collectively referred to herein as the "Individual Defendants."

## DUTIES OF THE INDIVIDUAL DEFENDANTS

21.    By reason of their positions as officers and/or directors and fiduciaries of PHH and because of their ability to control the business and corporate affairs of PHH, the Individual Defendants owed PHH and its shareholders fiduciary obligations of trust, loyalty, good faith and due care, and were and are required to use their utmost ability to control and manage PHH in a fair, just, honest and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of PHH and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.

22.    Each director and officer of the Company owes to PHH and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the

Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing. In addition, as officers and/or directors of a publicly held company, the Individual Defendants had a duty to promptly disseminate accurate and truthful information with regard to the Company's revenue, margins, operations, performance, management, projections and forecasts so that the market price of the Company's stock would be based on truthful and accurate information.

23. The Individual Defendants, because of their positions of control and authority as directors and/or officers of PHH, directly and/or indirectly exercised control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company. Because of their advisory, executive, managerial and directorial positions with PHH, each of the Individual Defendants had access to adverse non-public information about the financial condition, operations, and improper representations of PHH.

24. At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of PHH, and was at all times acting within the course and scope of such agency.

25. To discharge their duties, the officers and directors of PHH were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the financial affairs of the Company. By virtue of such duties, the officers and directors of PHH were required to, among other things:

        a.    refrain from acting upon material inside corporate information to benefit themselves;

b.      ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the SEC and the investing public;

c.      conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

d.      properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's financial results and prospects, and ensuring that the Company maintained an adequate system of financial controls such that the Company's financial reporting would be true and accurate at all times;

e.      remain informed as to how PHH conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices and make such disclosures as necessary to comply with federal and state securities laws; and,

f.      ensure that the Company was operated in a diligent, honest and prudent manner in compliance with all applicable federal, state and local laws, rules and regulations.

26.    Each Individual Defendant, by virtue of his or her position as a director and/or officer, owed to the Company and to its shareholders the fiduciary duties of loyalty, good faith and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of

their obligations as directors and officers of PHH, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company. The conduct of the Individual Defendants who were also officers and/or directors of the Company during the Relevant Period has been ratified by the remaining Individual Defendants who collectively comprised all of PHH's Board during the Relevant Period.

27.    The Individual Defendants breached their duties of loyalty and good faith by allowing defendants to cause or by themselves causing the Company to misrepresent its financial results and prospects, as detailed herein *infra*, and by failing to prevent the Individual Defendants from taking such illegal actions. In addition, as a result of defendants' illegal actions and course of conduct during the Relevant Period, the Company is now the subject of several class action law suits that allege violations of federal securities laws. As a result, PHH has expended and will continue to expend significant sums of money. Such expenditures include, but are not limited to:

a.    Costs incurred to carry out internal investigations, including legal fees paid to outside counsel; and,

b.    Costs incurred in investigating and defending PHH and certain officers in the class actions, plus potentially millions of dollars in settlements or to satisfy an adverse judgment.

28.    Moreover, these actions have irreparably damaged PHH's corporate image and goodwill. For at least the foreseeable future, PHH will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in illegal

behavior and have misled the investing public, such that PHH's ability to raise equity capital or debt on favorable terms in the future is now impaired.

## CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

29.    In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their common plan or design. In addition to the wrongful conduct herein alleged as giving rise to primary liability, the Individual Defendants further aided and abetted and/or assisted each other in breach of their respective duties.

30.    During all times relevant hereto, the Individual Defendants collectively and individually initiated a course of conduct that was designed to and did: (i) conceal the fact that the Company was improperly misrepresenting its financial results, in order to allow defendants to artificially inflate the price of the Company's shares; (ii) maintain the Individual Defendants' executive and directorial positions at PHH and the profits, power and prestige that the Individual Defendants enjoyed as a result of these positions; and (iii) deceive the investing public, including shareholders of PHH, regarding the Individual Defendants' management of PHH's operations, the Company's financial health and stability, and future business prospects, specifically related to the Company's financials that had been misrepresented by defendants throughout the Relevant Period. In furtherance of this plan, conspiracy and course of conduct, the Individual Defendants collectively and individually took the actions set forth herein.

31.    The Individual Defendants engaged in a conspiracy, common enterprise and/or common course of conduct commencing by at least February 1, 2005 and continuing thereafter. During this time the Individual Defendants caused the Company to conceal the true fact that PHH was misrepresenting its financial results. In addition, defendants also made other specific,

false statements about PHH's financial performance and future business prospects, as alleged herein.

32.    The purpose and effect of the Individual Defendants' conspiracy, common enterprise, and/or common course of conduct was, among other things, to disguise the Individual Defendants' violations of law, breaches of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment; to conceal adverse information concerning the Company's operations, financial condition and future business prospects; and to artificially inflate the price of PHH common stock so they could protect and enhance their executive and directorial positions and the substantial compensation and prestige they obtained as a result thereof.

33.    The Individual Defendants accomplished their conspiracy, common enterprise and/or common course of conduct by causing the Company to purposefully, recklessly or negligently misrepresent its financial results. Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants was a direct, necessary and substantial participant in the conspiracy, common enterprise and/or common course of conduct complained of herein.

34.    Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Individual Defendant acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his or her overall contribution to and furtherance of the wrongdoing.

**PHH'S MATERIAL WEAKNESSES IN ITS INTERNAL CONTROLS
LEAD TO A MATERIAL OVERSTSATEMENT OF THE COMPANY'S
FINANCIAL STATEMENTS AND RESULTS OF OPERATIONS**

35.    During 2004, Cendant had searched for but was unable to sell its PHH subsidiary and proceeded with the Spin-Off of PHH to Cendant shareholders, the plans for which were publicly announced on October 12, 2004 and was completed as of February 1, 2005.

36.    Prior to the Spin-Off, PHH, through its subsidiaries, provided mortgage services through its Cendant Mortgage Corporation subsidiary, commercial fleet management services through its PHH Vehicle Management Services, LLC (d/b/a PHH Arval) subsidiary, operated a fuel card business through its Wright Express, LLC subsidiary, and provided relocation services through its Cendant Mobility Services Corporation subsidiary.

37.    As part of the Spin-Off, PHH Underwent an internal reorganization, after which it continued to own Cendant Mortgage Corporation (subsequently renamed PHH Mortgage Corporation), PHH Vehicle Management Services, LLC (d/b/a PHH Arval) and other subsidiaries that engage in the mortgage and fleet management services businesses, no longer owned Cendant Mobility Services Corporation, Wright Express LLC and other subsidiaries that engaged in the relocation and fuel card businesses.  In addition, as part of the Spin-Off, Cendant. In addition, in January 2005, Cendant contributed to us Speedy Title and Appraisal Review Services, LLC, its appraisal services business, which provides appraisal review services, primarily referred through PHH's mortgage services businesses.  The Spin-Off thus streamlined PHH's operations to mortgage services and fleet management services.

38.    The Spin-Off also involved an allocation and valuation of certain tax attributes for PHH's post-Spin-Off businesses that had previously been reported for tax filing purposes as part of the Cendant consolidated income tax returns.

13

39.     However, PHH was experiencing material deficiencies in its financial reporting function and did not properly calculate the value of the deferred tax assets and goodwill. Notwithstanding the material weaknesses in financial reporting, the Individual Defendants failed to take needed action to address and correct the weaknesses.  Rather, the Individual Defendants authorized the issuance of financial statements that were falsely inflated as a result of the Company's overstatement of tax deferred assets and goodwill:

a.      PHH announced its first quarter financial results for 2005 on November 10, 2005, which included a net loss of $250 million, and filed those results in a Quarterly Report filed on Form 10-Q with the SEC on November 11, 2005 (signed by Edwards and Cashmen);

b.      PHH announced its second quarter financial results for 2005 on August 11, 2005, which included net income of $18 million, and filed those results in a Quarterly Report filed on Form 10-Q with the SEC on August 12, 2005 (signed by Edwards and Cashmen); and

c.      PHH announced its first quarter financial results for 2005 on May 12, 2005, which included net income of $46 million, and filed those results in a Quarterly Report filed on Form 10-Q with the SEC on May 16, 2005 (signed by Edwards and Cashmen).

40.     These earnings announcements and financial statements overstated the Company's net income by as much as $50 million based on an overstatement of the deferred tax assets and by as much as $21 million based on an overstatement of goodwill, and were the direct result of material deficiencies in its financial reporting function of the Company that the Individual Defendants failed to address and correct.

41.     On March 1, 2006, PHH issued a press release to publicly disclose the expected charges to reduce 2005 net income by as much as $71 million as a result of the $50 million overstatement of deferred tax assets and the $21 million overstatement of goodwill.  The charges

14

to reduce current income were attributable to material weaknesses in the Company's internal

controls over financial reporting:

> We expect that some of these control deficiencies will be classified as material
> weaknesses and that others may be classified as significant deficiencies that alone
> or in the aggregate may constitute material weaknesses. A material weakness is a
> control deficiency (within the meaning of Public Company Accounting Oversight
> Board Auditing Standard No. 2), or combination of control deficiencies, that
> results in there being more than a remote likelihood that a material misstatement
> of the annual or interim financial statements will not be prevented or detected on a
> timely basis by employees in the normal course of their assigned functions.

> As a result of management's ongoing efforts to complete its assessment of our
> internal controls over financial reporting and in anticipation that certain
> significant deficiencies will be classified as material weaknesses by management
> and in our independent auditor's internal control attestation report, we believe that
> we will need to continue to implement changes in our internal control over
> financial reporting.

42.   PHH also announced that Cashmen had been removed as the Company's Chief

Financial Officer, effective as of February 23, 2006, and that PHH would be unable to timely file

its 2005 Annual Report with the SEC. PHH's inability to timely file its Annual Report would

place the Company in default under certain credit facilities and financing agreements. Indeed,

the announcement of material weaknesses in the Company's internal controls and financial

reporting function prompted Fitch Ratings to place PHH debt on ratings watch negative, which

will increase the costs of PHH's financing.

## DEFENDANTS' IMPROPER FINANCIAL REPORTING

43.   In order to overstate its earnings during the Relevant Period, PHH violated GAAP

and SEC rules by failing to properly report its financial results due to its overstatement of

deferred tax assets and goodwill and weaknesses in the Company's financial reporting.

44.   GAAP are those principles recognized by the accounting profession as the

conventions, rules and procedures necessary to define accepted accounting practice at a

particular time. Regulation S-X (17 C.F.R. §210.4-01(a)(1)) states that financial statements filed with the SEC which are not prepared in compliance with GAAP are presumed to be misleading and inaccurate. Regulation S-X requires that interim financial statements must also comply with GAAP, with the exception that interim financial statements need not include disclosure which would be duplicative of disclosures accompanying annual financial statements. 17 C.F.R. §210.10-01(a).

45.     Due to the accounting knowingly errors knowingly caused by or permitted by each of the defendants, PHH presented its financial results and statements in a manner which violated GAAP, including the following fundamental accounting principles:

a.     The principle that interim financial reporting should be based upon the same accounting principles and practices used to prepare annual financial statements was violated (APB No. 28, ¶10);

b.     The principle that financial reporting should provide information that is useful to present and potential investors and creditors and other users in making rational investment, credit and similar decisions was violated (FASB Statement of Concepts No. 1, ¶34);

c.     The principle that financial reporting should provide information about the economic resources of an enterprise, the claims to those resources, and effects of transactions, events and circumstances that change resources and claims to those resources was violated (FASB Statement of Concepts No. 1, ¶40);

d.     The principle that financial reporting should provide information about how management of an enterprise has discharged its stewardship responsibility to owners (stockholders) for the use of enterprise resources entrusted to it was violated. To the extent that management offers securities of the enterprise to the public, it voluntarily accepts wider

16

responsibilities for accountability to prospective investors and to the public in general (FASB Statement of Concepts No. 1, ¶50);

   e.    The principle that financial reporting should provide information about an enterprise's financial performance during a period was violated.  Investors and creditors often use information about the past to help in assessing the prospects of an enterprise.  Thus, although investment and credit decisions reflect investors' expectations about future enterprise performance, those expectations are commonly based at least partly on evaluations of past enterprise performance (FASB Statement of Concepts No. 1, ¶42);

   f.    The principle that financial reporting should be reliable in that it represents what it purports to represent was violated.  That information should be reliable as well as relevant is a notion that is central to accounting (FASB Statement of Concepts No. 2, ¶¶58-59);

   g.    The principle of completeness, which means that nothing is left out of the information that may be necessary to insure that it validly represents underlying events and conditions was violated (FASB Statement of Concepts No. 2, ¶79); and,

   h.    The principle that conservatism be used as a prudent reaction to uncertainty to try to ensure that uncertainties and risks inherent in business situations are adequately considered was violated.  The best way to avoid injury to investors is to try to ensure that what is reported represents what it purports to represent (FASB Statement of Concepts No. 2, ¶¶95, 97).

   46.    Furthermore, the undisclosed adverse information concealed by defendants during the Relevant Period is the type of information which, because of SEC regulations, regulations of the national stock exchanges and customary business practice, is expected by investors and

securities analysts to be disclosed and is known by corporate officials and their legal and financial advisors to be the type of information which is expected to be and must be disclosed.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

47.   Plaintiff brings this action derivatively in the right and for the benefit of PHH to redress injuries suffered, and to be suffered, by PHH as a direct result of the breaches of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets, and unjust enrichment, as well as the aiding and abetting thereof, by the Individual Defendants.  PHH is named as a nominal defendant solely in a derivative capacity.  This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

48.   Plaintiff will adequately and fairly represent the interests of PHH in enforcing and prosecuting its rights.

49.   Plaintiff was and is the owner of PHH stock during times relevant to the Individual Defendants' wrongful course of conduct alleged herein, and remains a shareholder of the Company.

50.   Plaintiff has not made any demand on the present Board of PHH to institute this action because such a demand would be a futile, wasteful and useless act, particularly for the following reasons:

a.   As a result of their access to and review of internal corporate documents; conversations and connections with other corporate officers, employees and directors; and attendance at management and Board meetings, each of the defendants knew the adverse non-public information regarding the weaknesses in the Company's internal controls and the overstatement of deferred tax assets and goodwill resulting therefrom;

b.    Defendants Edwards, Kilroy, Krongard, Brinkley, Logan, Mariner and Van Kirk are each personally accused of wrongdoing, as each failed to address and correct material weaknesses in the Company's internal controls and financial reporting function. These defendants failed to make certain that PHH had adequate internal accounting procedures and controls necessary to ensure that the Company's financial statements complied with GAAP. These defendants breached the fiduciary duties that they owed to PHH and its shareholders in that they failed to prevent and correct the improper financials. Thus, the PHH Board cannot exercise independent objective judgment in deciding whether to bring this action or whether to vigorously prosecute this action because its members are interested personally in the outcome as it is their actions that have subjected PHH to potential liabilities for its violations of applicable securities laws;

c.    The acts complained of constitute violations of the fiduciary duties owed by PHH's officers and directors and these acts are incapable of ratification;

d.    These defendants' actions and inactions are the proximate cause of the restatement from which the Company will face millions of dollars in increased legal and accounting fees and significant damage to the Company's reputation;

e.    Each of the Director Defendants of PHH authorized and/or permitted the false statements disseminated directly to the public or made directly to securities analysts and which were made available and distributed to shareholders, authorized and/or permitted the issuance of various of the false and misleading statements and are principal beneficiaries of the wrongdoing alleged herein, and thus could not fairly and fully prosecute such a suit even if such suit was instituted by them;

f.     Any suit by the current directors of PHH to remedy these wrongs would likely expose the Individual Defendants and PHH to further violations of the securities laws that would result in civil actions being filed against one or more of the Individual Defendants, thus, they are hopelessly conflicted in making any supposedly independent determination whether to sue themselves;

g.     PHH has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Individual Defendants and current Board have not filed any lawsuits against themselves or others who were responsible for that wrongful conduct to attempt to recover for PHH any part of the damages PHH suffered and will suffer thereby;

h.     If the current directors were to bring this derivative action against themselves, they would thereby expose their own misconduct, which underlies allegations against them contained in class action complaints for violations of securities law, which admissions would impair their defense of the class actions and greatly increase the probability of their personal liability in the class actions, in an amount likely to be in excess of any insurance coverage available to the Individual Defendants.  In essence, they would be forced to take positions contrary to the defenses they will likely assert in the securities class actions.  This they will not do.  Thus, demand is futile; and,

i.     If PHH's current and past officers and directors are protected against personal liability for their acts of mismanagement, abuse of control and breach of fiduciary duty alleged in this Complaint by directors' and officers' liability insurance, they caused the Company to purchase that insurance for their protection with corporate funds, *i.e.*, monies belonging to the stockholders of PHH.  However, due to certain changes in the language of directors' and officers' liability insurance policies in the past few years, the directors' and officers' liability

insurance policies covering the defendants in this case contain provisions that eliminate coverage for any action brought directly by PHH against these defendants, known as, *inter alia*, the "insured versus insured exclusion." As a result, if these directors were to sue themselves or certain of the officers of PHH, there would be no directors' and officers' insurance protection and thus, this is a further reason why they will not bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage exists and will provide a basis for the Company to effectuate recovery. If there is no directors' and officers' liability insurance at all then the current directors will not cause PHH to sue them, since they will face a large uninsured liability.

51.     Moreover, despite the Individual Defendants having knowledge of the claims and causes of action raised by plaintiff, the current Board has failed and refused to seek to recover for PHH for any of the wrongdoing alleged herein.

## COUNT ONE

### Against All Defendants for Breach of Fiduciary Duty

52.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

53.     The Individual Defendants owed and continue to owe PHH fiduciary obligations. By reason of their fiduciary relationships, the Officer Defendants and Director Defendants owed and continue to owe PHH the highest obligation of good faith, fair dealing, loyalty and due care.

54.     The Individual Defendants, and each of them, violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith and supervision.

55.     Each of the Individual Defendants had actual or constructive knowledge that they had caused the Company to improperly misrepresent the financial results of the Company and

21

failed to correct the Company's publicly reported financial results and guidance. These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

56.    As a direct and proximate result of the Individual Defendants' failure to perform their fiduciary obligations, PHH has sustained significant damages. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

57.    Plaintiff, on behalf of PHH, has no adequate remedy at law.

<h3 style="text-align:center">COUNT TWO</h3>

<h3 style="text-align:center">Against All Defendants for Abuse of Control</h3>

58.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

59.    The Individual Defendants' misconduct alleged herein constituted an abuse of their ability to control and influence PHH, for which they are legally responsible.

60.    As a direct and proximate result of the Individual Defendants' abuse of control, PHH has sustained significant damages.

61.    As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

62.    Plaintiff, on behalf of PHH, has no adequate remedy at law.

## COUNT THREE

### Against All Defendants for Gross Mismanagement

63.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

64.     By their actions alleged herein, the Individual Defendants, either directly or through aiding and abetting, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of PHH in a manner consistent with the operations of a publicly held corporation.

65.     As a direct and proximate result of the Individual Defendants' gross mismanagement and breaches of duty alleged herein, PHH has sustained significant damages in excess of hundreds of millions of dollars.

66.     As a result of the misconduct and breaches of duty alleged herein, the Individual Defendants are liable to the Company.

67.     Plaintiff, on behalf of PHH, has no adequate remedy at law.

## COUNT FOUR

### Against All Defendants for Waste of Corporate Assets

68.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

69.     As a result of the improper accounting, and by failing to properly consider the interests of the Company and its public shareholders by failing to conduct proper supervision, defendants have caused PHH to waste valuable corporate assets by paying incentive based bonuses to certain of its executive officers and incur potentially millions/billions of dollars of legal liability and/or legal costs to defend defendants' unlawful actions.

23

70.    As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

71.    Plaintiff, on behalf of PHH, has no adequate remedy at law.

## COUNT FIVE

### Against All Defendants for Unjust Enrichment

72.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

73.    By their wrongful acts and omissions, defendants were unjustly enriched at the expense of and to the detriment of PHH.

74.    Plaintiff, as a shareholder and representatives of PHH, seeks restitution from these defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits and other compensation obtained by these defendants, and each of them, from their wrongful conduct and fiduciary breaches.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff demands judgment as follows:

A.    Against all of the Individual Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment;

B.    Extraordinary equitable and/or injunctive relief as permitted by law, equity and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on or otherwise restricting the proceeds of defendants' trading activities or their other assets so as to assure that plaintiff on behalf of PHH has an effective remedy;

C.     Awarding to PHH restitution from the defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by the defendants;

D.     Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

E.     Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all matters so triable.

Dated: March 27, 2006

**FARUQI & FARUQI, LLP**

By: _____

    Antonio Vozzolo (AV-8773)
320 East 39th Street
New York, New York 10016
Tel: 212-983-9330
Fax: 212-983-9331

**GARDY & NOTIS, LLP**
James S. Notis (JN-4189)
440 Sylvan Avenue, Suite 110
Englewood Cliffs, New Jersey 07632
Tel: 201-567-7377
Fax: 201-567-7337

Attorneys for Plaintiff

26

## CERTIFICATION PURSUANT TO LOCAL RULE 11.2

Plaintiff, by her attorneys, hereby certifies that to the best of her knowledge, the matter in controversy is not the subject of any other pending or contemplated judicial or arbitration proceeding.  Plaintiff is not currently aware of any other party who should be joined in this action.

I hereby certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: March 27, 2006

**FARUQI & FARUQI, LLP**

By: _____

Antonio Vozzolo (AV-8773)
320 East 39th Street
New York, New York 10016
Tel: 212-983-9330
Fax: 212-983-9331


**GARDY & NOTIS, LLP**
James S. Notis (JN-4189)
440 Sylvan Avenue, Suite 110
Englewood Cliffs, New Jersey 07632
Tel: 201-567-7377
Fax: 201-567-7337

Attorneys for Plaintiff

**VERIFICATION**

I, Natalie Gordon, am the plaintiff in the within action and a citizen of the State of New York.  I have read the foregoing complaint and know the contents thereof, except as to the matters therein stated to be alleged on information and belief, and as to those matters I believe them to be true.  I am a current shareholder of PHH Corporation and have been a shareholder throughout the time period of the complaint.

March 23, 2006

_____
Natalie Gordon